UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEANNA HAIN,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:10-cv-05484-RJB-KLS

REPORT AND RECOMMENDATION

Noted for July 8, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

On October 31, 2006, plaintiff filed an application for SSI benefits, alleging disability as of January 1, 2002, due to schizophrenia, a bipolar disorder, anxiety, panic attacks, agoraphobia, and learning disabilities. See Tr. 9, 127, 145. Her application was denied administratively both upon initial review and on reconsideration. See Tr. 9, 78, 84. A hearing was held before an

REPORT AND RECOMMENDATION - 1

administrative law judge ("ALJ") on March 23, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 9, 19-75.

On May 15, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 9-18. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 13, 2010, making the ALJ's decision defendant's final administrative decision. See Tr. 1; see also 20 C.F.R. § 416.1481. On July 8, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3. The administrative record was filed with the Court on October 5, 2010. See ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred in finding her migraine headaches to be non-severe impairments, and in rejecting the medical opinions of examining physicians David Dixon, Ph.D., and Daniel Neims, Psy.D. For the reasons set forth below, the undersigned agrees defendant erred in determining plaintiff to be not disabled, and therefore that this matter should be remanded for further administrative proceedings. While plaintiff has requested oral argument in this matter, the undersigned finds such argument to be unnecessary.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See

REPORT AND RECOMMENDATION - 2

Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of that process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff had "**the following severe impairments: diabetes,**

REPORT AND RECOMMENDATION - 3

**[a] bipolar disorder with psychotic features, [a] learning [disorder], depression, an anxiety disorder, polysubstance abuse in remission, and obesity**." Tr. 11 (emphasis in original). The ALJ also found in relevant part as follows:

> The claimant's migraine headaches is [sic] a non-severe impairment because the symptoms are mild. The claimant did not take any medications on a regular basis for the symptoms (Ex. 25F at 80); when medication was provided, it was effective in relieving the symptoms (see Ex. 23F at 65; 20F at 13). Further, a CT scan of the head was normal (Ex. 20F at 13).

Id. Plaintiff argues these findings are neither supported by substantial evidence nor free of legal error. The undersigned disagrees.

More specifically, plaintiff argues the ALJ's "brief discussion" of her migraine headaches fail to show she adequately considered the evidence in the record related thereto. ECF #14, p. 13. But nothing in that discussion – though perhaps not as detailed as plaintiff would like – indicates the ALJ inaccurately summarized that evidence. Indeed, while the undersigned agrees the record does not necessarily establish that plaintiff's reported symptoms were only mild in their severity, it does show medications were largely effective in relieving those symptoms, as well as a lack of abnormal objective clinical findings or of actual functional or work-related limitations stemming from her migraine headaches assessed by a medical source. See Tr. 453-54, 464-66, 468-70, 472-74, 502, 631, 633-34, 657, 671, 745, 751, 846-49, 897-98, 947-49, 958-59.

Plaintiff points to her testimony and self-reports to support her argument here. But as just indicated, the record shows plaintiff achieved largely positive results with medication that could only have been based on her own self-reports to that effect. See Tr. 464, 466, 502, 846; but see Tr. 948. Plaintiff further argues her medication was administered only after having gone to the emergency room, but the record reveals she did not take any medications at home, and instead just came to the emergency room for treatment, indicating the choice was hers. See Tr. 959. In

REPORT AND RECOMMENDATION - 4

any event, at step two, although the ALJ must take into account a claimant's subjective reports of pain and other symptoms (see 20 C.F.R. § 416.929), the severity determination is made solely on the basis of the objective medical evidence in the record:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities*. If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA [substantial gainful activity].

SSR 85-28, 1985 WL 56856 *4 (emphasis added).[1] Accordingly, the undersigned finds the ALJ did not err in determining plaintiff's migraine headaches to be non-severe.

II. The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

---

[1] In addition, even if the ALJ were required to base his step two determination on plaintiff's subjective complaints as well, plaintiff – except perhaps in regard to her activities of daily living (see ECF #14, p. 16) – has not expressly challenged the ALJ's various reasons for finding her to be not fully credible concerning her reported symptoms and limitations (see Tr. 14-16). As such, the ALJ was under no obligation to adopt any functional limitations based on her testimony or self-reports.

REPORT AND RECOMMENDATION - 5

all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v.

REPORT AND RECOMMENDATION - 6

Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.  Dr. Neims

Plaintiff challenges the ALJ's decision to "give less weight" to the opinion of Dr. Neims, who, the ALJ noted, "indicated, with a checked-the-box form, that" she "had marked to severe limitations in aspects of cognitive and social functioning." Tr. 17. In regard to the opinion of Dr. Neims, the ALJ went on to further state:

> . . . Dr. Neims did not prepare a detailed evaluation; rather, he checked off boxes on the State's psychological evaluation form. Further, his opinion is not consistent with the overall medical record or with the opinions of examining psychiatrists Dr. [Gary] Lenza[, M.D.,] and Dr. [Kathryn M.] Rahn[, M.D.]

Tr. 17. Plaintiff argues these are not specific and legitimate reasons for rejecting the marked to severe limitations indicated by Dr. Neims. The undersigned agrees the ALJ erred here.

First, it is true that the Ninth Circuit has expressed preference for individualized medical opinions over such "checked-the-box" forms. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983). It also is true that an ALJ need not accept the opinion of a physician if, as noted above, "that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson, 359 F.3d at 1195 (9th Cir. 2004); see also Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. As pointed out by plaintiff, however, the forms Dr. Neims completed contain detailed written notes, setting forth both the diagnoses he made and his own personal observations, along with the results of mental status examinations and psychological

REPORT AND RECOMMENDATION - 7

testing he conducted. See Tr. 326-32, 338-39, 402-10, 412-21.

"[W]hen mental illness is the basis of a disability claim," competent objective medical evidence "may consist of the diagnoses and observations of professionals trained in the field of psychopathology." Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent psychiatric evidence); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury.").

The undersigned does agree with the ALJ that the findings of Dr. Neims are inconsistent with those of Dr. Lenza or Dr. Rahm, given that nothing in their own diagnostic notes or clinical findings indicate plaintiff suffers from either marked or severe mental functional limitations. See Tr. 210-11, 284-91, 882-84. Plaintiff asserts there are no inconsistencies in the record here – or in regard to the findings of Dr. Dixon discussed below – arguing Drs. Lenza and Rahm "simply gave no conclusions in some areas" reached by Dr. Neims and Dr. Dixon, and there is no actual evidence that Dr. Lenza and Dr. Rahm "would have reached different conclusions." ECF #14, p. 20. But the mere fact that Drs. Lenza and Rahm did not expressly make such conclusions, does not establish they would have made the same ones as Drs. Neims and Dixon. Indeed, it appears the opposite is more likely, given, as just noted, that nothing in Dr. Lenza's or Dr. Rahm's notes or findings indicates they would have done so.[2]

---

[2] Plaintiff notes Dr. Lenza assessed a global assessment of functioning ("GAF") score of 45 in mid-July 2006 (see Tr. 288), which is indicative of '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision

REPORT AND RECOMMENDATION - 8

The same is true with respect to much of other objective medical evidence in the record concerning plaintiff's mental impairments, which also fails to support the severity of limitations Dr. Neims indicated, or again, as discussed in greater detail below, the conclusions of Dr. Dixon, who opined as to somewhat similar mental functional limitations. See Tr. 220, 223-25, 238, 243, 251-52, 260-61, 310, 313, 324-25, 360, 364-66, 378, 383, 397-98, 446-47, 292-95, 360, 362, 364-66, 374-77, 424-25, 427-28, 431-32, 434-41, 444-45, 448-51, 629-30, 682-83, 691-93, 733-34, 846-49, 854-55, 857, 860, 866-67, 869-70, 872, 878, 891-92, 904-05, 950-51. On the other hand, as just noted, the limitations assessed by Dr. Neims are consistent – at least to some extent in regard to plaintiff's ability to function socially – with those of Dr. Dixon, again as discussed in greater detail below (see Tr. 340-47), as well as some of the other objective medical evidence in the record (see Tr. 240, 244, 253-56, 262-63, 280-83, 442, 675-76, 685, 689-90, 694-95, 735-36, 894-95, 897-98). As such, given that, once more as discussed in greater detail below, the ALJ

---

4th ed. 2000) ("DSM-IV") at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning."). That score, though, was assessed at the time plaintiff voluntarily admitted herself to the hospital after reporting an overdose of an over-the-counter medication, whereas two days later upon discharge, Dr. Lenza assessed her with a GAF score of 55, which indicates only moderate mental functional limitations. See Tr. 286, 290-91; Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) ("A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'") (quoting DSM-IV at 34).

Nor does the undersigned find persuasive plaintiff's argument that findings obtained by Dr. Lenza are "not wholly relevant to the period considered by the ALJ," because his evaluations were performed "months prior to" the date she filed her SSI application, October, 31, 2006, since plaintiff claimed therein disability beginning January 1, 2002, even though the actual receipt of SSI benefits – once eligibility for such benefits has been granted – is determined by the application filing date. ECF #19, p. 3; see Tr. 127; 42 U.S.C. § 1382(c)(7) (SSI benefits application of claimant who is found eligible therefor deemed effective on later of first day of month following date that application is filed, or first day of month following date claimant becomes eligible for such benefits). Similarly, Dr. Rahn's comments that there appeared to be "clearly something wrong" with plaintiff – even though she had a fairly normal mental status examination at the time – and that she tended "to be very reactive to situations which disappoint her or upset her" and could "become easily impatient," hardly are indicative of marked to severe mental functional limitations, although they do indicate that some mental health problem exists. See Tr. 882-84. Indeed, as did Dr. Lenza upon plaintiff's discharge from the hospital in mid-July, 2006, Dr. Rahn also assessed plaintiff with a GAF score of 55, again indicating only moderate mental functional limitations. See Tr. 884. Nor are the findings of Dr. Lenza and Dr. Rahn consistent with – or convincingly close to – the conclusions of Dr. Dixon, who found plaintiff had "extreme problems with concentration and persistence," could "be expected to demonstrate extreme irrationality and exhibited 'mood volatility' that would "interfere with appropriate social interaction at times." Tr. 347.

REPORT AND RECOMMENDATION - 9

erred in rejecting the findings of Dr. Dixon as well, and that none of the other reasons the ALJ gave for rejecting the limitations found by Dr. Neims are valid, remand for further consideration of those limitations is warranted.

B. Dr. Dixon

As for Dr. Dixon, the ALJ also gave his opinion "less weight" for the following reasons:

> . . . [Dr.] Dixon . . . concluded that the claimant had extreme problems with concentration and persistence; extremely irrational thinking at times; and a GAF score of 40[3] (Ex. 7F at 7). Dr. Dixon did not complete a comprehensive clinical interview (Ex. 7F at 1) and he failed to define the term "extreme." Further, his conclusion is not consistent with the claimant's reported daily activities, the overall record, or the opinions of Dr. Lenza and Dr. Rahn.

Tr. 17. Again, the undersigned agrees with plaintiff that the ALJ failed to provide valid reasons for rejecting Dr. Dixon's opinion here.

Although Dr. Dixon did expressly state in his evaluation report that "[a] comprehensive clinical interview was not requested or authorized" (see Tr. 340), that report clearly shows he both interviewed and observed plaintiff, and recorded detailed findings based on in part thereon. See Tr. 340-47. See Sanchez, 85 F. Supp.2d at 992 (competent objective medical evidence may consist of observations of professionals trained in field of psychopathology); see also Sprague, 812 F.2d at 1232 (opinion based on clinical observations supporting diagnosis of depression is competent psychiatric evidence). Dr. Dixon, as did Dr. Neims, also performed a mental status examination of plaintiff, as well as psychological testing. See Tr. 343-46; Clester, 70 F.Supp.2d at 990 (mental status examination results provide basis for diagnostic impression of psychiatric disorder, just as results of physical examination do so for diagnosis of physical illness or injury).

---

[3] "A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." White v. Commissioner of Social Sec., 572 F.3d 272, 276 (6th Cir. 2009) (quoting Edwards v. Barnhart, 383 F.Supp.2d 920, 924 n. 1 (E.D.Mich. 2005)).

REPORT AND RECOMMENDATION - 10

The undersigned further agrees with plaintiff that the fact that Dr. Dixon did not actually define the term "extreme" does not necessarily detract from the credibility of his conclusions, as it is fairly clear that Dr. Dixon's description of plaintiff's "extreme problems with concentration and persistence" and "extreme irrationality," indicate he believed plaintiff's mental impairments had a very significant impact on plaintiff's functioning. Tr. 346-47. In addition, what evidence there is in the record of plaintiff's daily activities, hardly demonstrate an ability to perform work-related tasks in a manner or frequency at odds with Dr. Dixon's conclusions regarding her mental functioning. See Tr. 44-50, 57-63, 153-56, 168-69, 174.

Plaintiff did report on one occasion that her activities included "working on the car, doing chores/repairs around the house, watching movies, doing computer work, and taking care of her mom." Tr. 857. However, the undersigned agrees with plaintiff that this statement provides little in the way of any details concerning how much or how frequently she engages in such activities. Lastly, for the same reasons the undersigned found remand to be warranted with respect to the limitations found by Dr. Neims based on the medical evidence in the record regarding plaintiff's mental impairments, remand here to is warranted with respect to those of Dr. Dixon. Namely, while Dr. Dixon's "extreme" findings may not be consistent with much of the objective medical evidence in the record, including the findings of Dr. Lenza and Dr. Rahm, they do share at least some consistency with those of Dr. Neims and some other objective medical evidence contained therein, and the other reasons the ALJ gave for rejecting them are not valid.

III. <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional

REPORT AND RECOMMENDATION - 11

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental impairments and limitations, it is unclear whether the ALJ's assessment of his residual functional capacity or the ALJ's determination at step five of the sequential disability evaluation process is supported by the substantial evidence in the record.[4] Accordingly, remand for further consideration of these issues is warranted.

---

[4] A claimant's residual functional capacity ("RFC") assessment is used at step five to determine whether he or she can perform other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work that the claimant is able to perform based on all the relevant evidence in the record. See id. In this case, the ALJ found plaintiff had the following mental residual functional capacity:

> **. . . to perform less than full a [sic] range of medium work . . . She can lift 25 pounds frequently and 50 pounds occasionally; sit for 6 hours in an 8 hour day; and stand for 6 hours in an 8 hour days [sic]. She can do unskilled work and should have only occasional interaction with co-workers or the general public.**

See Tr. 13 (emphasis in original). Also as discussed above, however, the ALJ erred in evaluating the evidence in the record from Dr. Neims and Dr. Dixon, which calls into doubt the validity of the ALJ's RFC assessment.

Further, if a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation process, which the ALJ determined to be the case (see Tr. 17), at step five the ALJ must show there are a significant

REPORT AND RECOMMENDATION - 12

## CONCLUSION

Based on the foregoing discussion, the Court should find defendant improperly concluded plaintiff was not disabled. Accordingly, the Court should reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 8, 2011**, as noted in the caption.

DATED this 17th day of June, 2011.

Karen L. Strombom
United States Magistrate Judge

---

number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert. Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical question posed by the ALJ to a vocational expert. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ's description of the claimant's disability thus "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations found not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert that contained substantially the same limitations as were included in the ALJ's assessment of plaintiff's RFC. See Tr. 66. In response to that hypothetical question, the vocational expert testified that there were other jobs an individual with those limitations – and who had the same age, education and work background as plaintiff – could perform. See Tr. 66-67. Based on that testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See Tr. 17-18. Again, though, it is not at all clear that the hypothetical question the ALJ posed accurately describes all of plaintiff's functional limitations, given the ALJ's errors in evaluating the opinions of Drs. Neims and Dixon and in assessing plaintiff's residual functional capacity.

REPORT AND RECOMMENDATION - 13